UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

PATRICIA HAUSEMAN

                Plaintiff

v.

CONSUMER RECOVERY ASSOCIATES

And

ICS & ASSOCIATES

                Defendants.
---------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 16 2011 ★
BROOKLYN OFFICE

COMPLAINT

CV11-00772

JURY DEMANDED

SUMMONS ISSUED

DEARIE, CH. J

MANN, M.J.

## INTRODUCTION

1. This is an action for money damages and declaratory judgment, brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA"), and New York General Business Law § 349.

## JURISDICTION AND VENUE

2. The Court's jurisdiction is conferred by 15 U.S.C. § 1692k and 28 U.S.C. §1337.

3. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

4. Declaratory relief is available pursuant to 28 U.S.C. §§2201 and 2202.

5. Venue in this District is proper because the acts and transactions that give rise to this action occurred, in substantial part, in this district, Defendants transact business in this District, and Plaintiff resides in this District.

1

## **PARTIES**

6. Plaintiff, Patricia Hauseman is a natural person who has resided at all relevant times in Brooklyn, New York.

7. Plaintiff is a consumer as defined in the FDCPA § 1692a(3).

8. Defendant Consumer Recovery Associates, LLC (hereinafter "CRA") is a foreign corporation engaged in the collection of debts in this state, with its principal place of business located in Virginia Beach, VA

9. CRA's principal purpose is the collection of debts; and it regularly attempts to collect debts alleged to be due another.

10. CRA is a debt collector as defined in FDCPA §1692a(6).

11. Defendant ICS & Associates (hereinafter "ICS") is a foreign corporation or business entity engaged in the collection of debts in this state.

12. ICS's principal purpose is the collection of debts; and it regularly attempts to collect debts alleged to be due another.

13. Upon information and belief, ICS is intertwined and indistinguishable from CRA, and ICS is an alias and/or alter ego of CRA.

14. ICS is a debt collector as defined in FDCPA §1692a(6).

15. For example, and without limitation, ICS & Associates lists CRA's phone number in its employment advertisements and CRA's staff handles inquiries regarding employment with "ICS & Associates" which, upon information is because employment with "ICS & Associates" is, in fact, employment with CRA. Unlike CRA, ICS is not listed with the New York Department of State or the New York City Department of Consumer Affairs.

## FACTS

16. On or about November 3, 2010, an ICS representative called Ms. Hauseman and left a voicemail message regarding a "pending case" and stating that ICS "needed to take a statement".

17. Concerned that she had been sued or that there was some sort of legal proceeding that involved her of which she was unaware, Ms. Hauseman called ICS back on November 3 at approximately 6:21 PM, and spoke with an ICS representative.

18. The representative stated that "there is a tax filing here under" Ms. Hauseman's social security number.

19. When questioned, the representative stated that "It's an income tax filing. It's a 1099C form"

20. Ms. Hauseman asked "What does this have to do with a case pending?"

21. The representative answered, "Well, you have a balance that's pending to release to the Internal Revenue Service as a tax liability. We wanted to contact you because evidently you have no history of a state or federal filing on your record. What we do is when we're handling tax filings involving people with no histories, we contact them first, we give them the balance that's pending to be released as well as a settlement offer for voluntary arrangement."

22. When asked for more specifics, about what he meant by having "no history" of a "filing", the representative stated that he meant a "negative tax filing" such as "back taxes, unclaimed income, wage garnishing, tax liens or levies, things of that nature".

23. The representative then stated that, "[w]hat's going to happen is if we don't talk to you and we don't give you the settlement, the only recourse we have is to process the balance and it's a balance with interest as additional income and then you would have to – you'd have a balance

with the accounts receivable of the Department of the IRS and they would look to recover income tax on the balance."

24. Ms. Hausman asked for details about the alleged debt, and was told by the representative that "it looks like there's a 5 Star Bank VISA account that we're handling. It was opened in '98, paid on until 2001."

25. When Ms. Hauseman explained that she had never heard of 5 Star Bank, the representative stated, inter alia, that "the last payment was received February 15, 2001" and that "[t]heir only recourse as far as writing off the account because it is uncollectible is filing it as additional income. What happens though, is because this account was in collections for 8 years, the balance which is relased to the IRS includes interest so we wanted to give you an opportunity to at least have the offer of the settlement. . ."

26. The representative stated that "The balance at charge off was $978.01" and that ICS was "asked to file a balance of $3,412.62."

27. The representative further stated that ICS's "verification team" had determined that "there was no reports of fraud on the account" [sic].

28. When Ms. Hauseman responded that her "not having an account with 5 Star Bank is absolutely fraud", the representative responded that it "it's not fraud because. . . you were getting mailings, it looks like, to 140 Skillman, #2R in Brooklyn. There was numerous statements that you had received and there was just no action towards them."

29. When asked, the representative conceded that he did not have copies of any billing statements and had no idea whether the billing statements had been sent to "a correct or updated address" and that he could not "speak to the collection agency as even having the ability to pull

4

updated information."

30. The ICS representative further stated "the only reason we were able to reach you is because we're able to obtain phone numbers from a secured database that law enforcement and government uses and the only way we have clearance to that is because we pass security standards.

31. The following day, November 4, at approximately 12:05 p.m., Ms. Hauseman again called ICS and requested their address in order to send a "cease and desist" letter instructing ICS not to contact her again regarding the purported debt.

32. A female representative replied to Ms. Hauseman's request by stating that she would "notate the account not to call your number".

33. When Ms. Hauseman stated that, even so, she "still need[ed] an address to send a formal notice over so you are required to give me that address", ICS's representative responded as follows: "Ma'am if you don't wish to resolve your adult responsibilities, we'll notate the account and have a great day". The representative then hung up on Ms. Hauseman.

34. A few minutes later, Ms. Hauseman called ICS back and spoke with ICS representative "Ms. Pearson". Upon Ms. Hauseman stating her name and asking to speak with a supervisor, ICS's representative again hung up on her.

35. Ms. Hauseman immediately called back and asked to speak with a supervisor again. The representative that answered the phone this time stated that he was a supervisor.

36. The "supervisor" again refused to provide Ms. Hauseman with an address, and stated, inter alia that if Ms. Hauseman called again "there will be consequences". The supervisor then hung up on Ms. Hauseman.

37. Ms. Hauseman then called ICS again and asked ICS representative "Mr. Haynes" to speak with ICS's general counsel, explaining that ICS was "required by law to give me that information so that I can formally dispute [the account]".

38. The conversation then proceeded as follows:

> **ICS:** By law? You know, what's funny about that is that you're stating by law, We've been in business for three years and we've never had a single lawsuit against us. So for you to try to tell me what's legal and what's illegal. I just think you're a little out of your area of expertise. Now I have a question. Do you work? . . .
>
> **ICS:** Do you work ma'am?
>
> **Plaintiff:** That's irrelevant of getting the address.
>
> **ICS:** Are you working right now?
>
> **Plaintiff:** It's irrelevant to getting the address.
>
> **ICS:** It's relevant, because what I'm trying to explain to you is this is a place of business. We do work here. The employees are trying to do work. You keep calling.
>
> **Plaintiff:** All you need to do is give me the address.
>
> **ICS:** Be quiet, ma'am, when I talk to you.
>
> **Plaintiff:** Excuse me?
>
> **ICS:** Did I stutter? I said be quiet when I talk to you because what I have to say is important. If you continue to call, it will be our attorneys contacting you and it will just further worsen your situation so my suggestion...
>
> **Plaintiff:** My attorneys are going to be contacting you provided you give me that information or not.
>
> **ICS:** Listen, take whatever, listen, take whatever little dignity you have left. I understand your dignity has been squashed based upon our conversations. Go and save that for a later date. Okay. We're not interested in speaking to you ma'am. This conversation is over.

39. The numerous unlawful, unfair and deceptive statements and other conduct as set forth herein was willful and malicious.

40. Defendant's unlawful conduct caused Plaintiff actual damages, including in the form of emotional distress, anxiety and frustration.

## FIRST CAUSE OF ACTION

### The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA")

41. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

42. By undertaking the above referenced collection activities Defendants repeatedly violated 15 U.S.C. § 1692 *et seq.*

43. Specifically and without limitation, Defendants violated the FDCPA 15 U.S.C. §§ 1692 et seq., inter alia, by:

    a. Describing Ms. Hauseman's account as a "pending case" when no legal action was pending against her, in violation of §§ 1692e, e(5), e(7), e(10), and 1692f.

    b. Telling Ms. Hauseman that Defendants "need to take a statement" when Defendant's were not required to or even seeking to "take a statement" but rather were merely trying to convince Ms. Hauseman to make a payment on the alleged debt, in violation of §§ 1692e, e(5), e(10), and 1692f.

    c. Stating that there was a "tax filing here" with regard to Ms. Hauseman's account, that issuing a 1099C, and that she had a "balance pending release" to the IRS, when Defendants had not prepared and had no intention of filing a 1099C

7

form regarding this account (and when a 1099C could not be legally issued to Ms. Hauseman), in violation of §§ 1692e, e(5), e(8), e(10), and 1692f.

d. Characterizing a 1099C as a "filing" that was equivalent or comparable to a tax lien, bankruptcy, levy or garnishment, in violation of §§ 1692e, e(10), and 1692f.

e. Stating that a 1099C is required to or would properly include interest and other charges in addition to principal when, by law, a 1099C may not permissibly include interest or other charges and is certainly not required to include such charges, in violation of §§ 1692e, e(2), e(5), e(10), and 1692f.

f. Failing to notify Ms. Hauseman that the claim was time-barred and that any payment might retoll the statute of limitations as required under the Administrative Code of the City of New York (e.g. § 20-493.2) and implementing Rule § 2-191), in violation of §§ 1692e, e(2), e(5), e(10), and 1692f.

g. With regard to ICS, attempting to collect a debt without a valid NYDCA license, in violation of §§ 1692e, e(5), e(10), and 1692f.

h. Falsely stating that this account or non-payment of the account could be reported to credit reporting agencies when, by Defendants own account, more than 7 years had passed since any activity on the account, in violation of §§ 1692e, e(5), e(10), and 1692f.

i. Refusing on numerous occasions to provide Ms. Hauseman with a mailing address, inter alia, in order to prevent Ms. Hauseman from availing herself of her rights under §§ 1692g and 1692c, in violation of 1692f.

8

j. Threatening legal action or legal consequences in response to Ms. Hauseman's requests for Defendants' mailing address, in violation of §§ 1692e, e(2), e(5), e(10), and 1692f.

k. Harassing and verbally abusing Ms. Hauseman in violation of §§ 1692f and 1692d.

l. Falsely stating that Defendants have a "Verification Team" that had made a good faith determination that no fraud had occurred, in violation of §§ 1692e, e(2), e(10), and 1692f.

m. Falsely stating that no fraud had occurred because Ms. Hauseman had not responded to statements sent to an address which, by Defendants own admission, Defendants had not and could not verify, in violation of §§ 1692e, e(2), e(10), and 1692f.

n. Attempting to collect on a debt that Ms. Hauseman did not owe on a credit card she never had, in violation of §§ 1692e, e(2), e(5), e(10), and 1692f.

o. CRA's use of the name "ICS & Associates" in violation of §§1692e, e(14) and 1692f.

44. Upon information and belief, the conduct set forth above is not only willful and in bad faith, but is part of Defendants' operating procedure and part of a systematic attempt to bully and threaten consumers into making payments on time-barred debt and/or debt that is not owed by falsely threatening them with issuance of 1099C's that are not sent, by threatening to include interest on 1099C's when interest may not be properly included, and by refusing to provide an address to which consumer's might dispute the debt or demand a cessation in communications

(as is a consumer's right pursuant to the FDCPA) in a way that is legally enforceable and easily verifiable.

45. Ms. Hauseman suffered harm as a result of Defendants' misconduct, and is entitled to actual and statutory damages, costs and attorneys fees, pursuant to §1692k.

## SECOND CAUSE OF ACTION

## NYGBL § 349 (Deceptive Acts and Practices Unlawful)

46. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

47. Each of the deceptive acts and practices set forth above, including but not limited to each deceptive act and practice set forth in the First Cause of Action was committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of §349 independent of whether it also constituted a violation of any other law.

48. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public. Specifically, and without limitation, each of the unfair and deceptive practices listed above in Paragraph 43 (a) through (o) is, upon information and belief, a recurring practice that Defendants have taken not just against Ms. Hauseman, but against large numbers of consumers as part of a policy and practice that is designed and has the effect of increasing Defendants' profits by means of deception and misrepresentation.

49. Each of Defendants' deceptive acts, by their nature, involves a material misrepresentation.

50. As a result of these violations of NYGBL §349, Plaintiff has suffered actual damages and is therefore entitled to actual damages, punitive damages of up to $1,000, attorney's fees and

costs.

51. Ms. Hauseman's actual damages include, without limitation, sleep deprivation, stomach pains, and anxiety.

**WHEREFORE** plaintiff respectfully requests that this Court award:

a. On the FIRST CAUSE OF ACTION (FDCPA), Declaratory Judgment that Defendants' conduct violated the FDCPA, actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692 k;

b. On the SECOND CAUSE OF ACTION (NYGBL §349), actual damages, three times the actual damages up to $1000, costs and reasonable attorney's fees pursuant to NYGBL §349(h);

c. Such other and further relief as law or equity may provide.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: February 14, 2011
      White Plains, New York

Respectfully Submitted,

*/s/ Daniel A. Schlanger*

Daniel A. Schlanger, Esq. (ds-9330)
Schlanger & Schlanger, LLP
1025 Westchester Ave., Suite 108
White Plains, NY 10604
Ph: 914-946-1981
Fax: 914-946-2930
daniel@schlangerlegal.com